IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ORLANDO BETHEL and<br>GLYNIS BETHEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:04cv743-MEF |
| | ) | [WO] |
| CITY OF MONTGOMERY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, the *pro se* plaintiffs complain that the defendants

violated their First Amendment rights by requiring them to obtain a permit before exercising

their right to free speech on a public right of way and by failing to act on a request for a

permit to exercise their right to free speech. The plaintiffs name as defendants the City of

Montgomery, the City of Montgomery Police Department, Chief of Police John Wilson, Lt.

Col. M.B. Pierce, Maj. C.J. Dixon, and Officer Roderick F. Byrne ("the defendants"). The

defendants are sued in their official and individual capacities.

Pending before the court are the following: the plaintiffs' motions for a declaratory

judgment (docs. # 2 & 6); the defendants' motion to dismiss (doc. # 12)[1]; the plaintiffs'

motion for summary judgment (doc. # 29); the defendants' motion for summary judgment

(doc. # 36); the plaintiffs' motion for a preliminary injunction (doc. # 39); the plaintiffs'

---

[1] In light of this Recommendation, this motion is due to be DENIED as moot.

motion to waive posting of security (doc. # 43)[2]; the plaintiffs' motion to admit exhibit and "Yy" and additional memorandum (doc. # 44)[3]; the plaintiffs' motion for judgment on the pleadings (doc. # 48); and the plaintiffs' motion to refuse to consent to the jurisdiction of the Magistrate Judge (doc. # 51).[4]

## PROCEDURAL HISTORY

In the plaintiffs' "First Amended Complaint for Declaratory, Preliminary and Permanent Injunctive Relief and Damages" (doc. # 5), they seek to enjoin the defendants from enforcing the city ordinance that they maintain requires them to obtain a "Public Assembly Permit"

> before exercising their right to free speech on a public right of way, and from acting in such a manner as to violate Plaintiff's liberties and rights to Freedom of Speech, Freedom to Assembly, Free Exercise of Religion and Equal Protection, guaranteed under the First and Fourteenth Amendments to the United States Constitution; . . .

(Amended Compl., doc. # 5, at p. 2, ¶1). The plaintiffs make a facial and an "as-applied" challenge to the ordinance.[5] (*Id*. at p. 3, ¶ 2).

---

[2] This motion is due to be DENIED as moot.

[3] This motion is due to be GRANTED.

[4] On August 11, 2004, this case was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A). (Doc. # 24). The Magistrate Judge is not exercising jurisdiction over this matter based on the plaintiffs' consent. Any objections to the referral to the Magistrate Judge lack merit. Thus, this motion is due to be DENIED.

[5] Although the plaintiffs allege an "as-applied" challenge to the ordinance, the court looks to the plaintiffs' "cause of action for what it actually is, not for what the plaintiff would have it be." *DA Mortgage, Inc. v. City of Miami Beach*, 486 F.3d 1254, 1262 (11th Cir. 2007). The undisputed evidence presented by the parties demonstrate that the plaintiffs were permitted to protest and preach on May 28, 2004 on Montgomery, Commerce, Bibb and Coosa streets in downtown Montgomery. The plaintiffs were not

In Counts I, II, and IV of the amended complaint, the plaintiffs allege that the defendants violated their rights to freedom of speech, freedom of assembly, and free exercise of their religion, respectively, under the First Amendment to the United States Constitution. In Count III, the plaintiffs complain that they were denied equal protection under the law in accordance with the Equal Protection Clause of the Fourteenth Amendment. Finally, in Count V, the plaintiffs allege that an unnamed defendant deprived them of "their right to be free from unreasonable seizure" by threatening to arrest them in violation of the Fourth Amendment to the United States Constitution.

The plaintiffs seek both monetary damages and injunctive relief on their claims. Specifically, the plaintiffs request declaratory relief and permanent injunction prohibiting the defendants from

> enforcing the "City of Montgomery Application for a Public Assembly Permit" and to enjoin the Defendants . . . from obstructing Plaintiffs from exercising Plaintiffs' constitutional rights to street preach, evangelize, and hold signs with their religious messages on public right-of-ways without first obtaining a "permit," . . .

(Amended Compl., doc. # 5, at p. 35).

The parties have filed cross motions for summary judgment on the grounds that there are no genuine issues of material fact, and they are entitled to judgment as a matter of law. The legal positions taken by the parties, in light of the undisputed facts, are difficult to

---

arrested, accosted, or otherwise prohibited from exercising their right to protest or preach. Despite plaintiff Glynis Bethel's hyperbole and rhetoric that she was harassed by Montgomery City police officers, the evidence does not support her contention. Consequently, the ordinance was not applied to the plaintiffs to require them to have a permit. Thus, the plaintiffs' sole challenge to the ordinance is a facial challenge. *Id.*

describe in any coherent fashion.  Nonetheless, the central question for the Court is whether, on the undisputed facts, either party is entitled to summary judgment.  It is to that question that the Court now turns.

## FACTS

Plaintiffs Orlando and Glynis Bethel are "HOLY GHOST filled Christians with sincerely held religious beliefs . . . who desire to share their Christian faith in JESUS CHRIST . . . through peaceful street preaching and street evangelizing. . ."  (Amended Compl., doc. # 5, at p. 7, ¶ 23).  According to the plaintiffs, they have been permitted to preach on street corners in Montgomery without the necessity of a permit and without police interference.  (*Id*. at p. 8, ¶ 28).

The City of Montgomery Police Department "Traffic Division is responsible for accepting and processing Public Assembly Permits."  *See* City of Montgomery website, http://www.montgomeryal.gov/index.aspx?page=1146, accessed February 22, 2010.  Although the website indicates that there is a "permits page" with more detail about public assembly permits, the only information provided on the City's web page is the Public Assembly Permit Application. The application requires the name of the organization, the person or organization responsible and the mailing addresses and phone numbers of the organization and responsible persons.  In addition, the Application reads as follows.

> It is respectfully submitted that a public assembly permit be issued to the above-named person or organization.  The following items of information are submitted:

4

(1)     The purpose of the public assembly is:
(2)     Date of Assembly
(3)     Hours: Begin            End
(4)     Number of Persons:        Floats:
(5)     Route of parade and/or location of public assembly (attach map if needed):
(6)     Description as to size and wording of all signs, placards, flags or cards to be carried and the names and words of all songs to be sung, chants to be chanted and cheers to be yelled:

(Pl's Ex. A).

There is a space on the application for the permit to be granted or denied by the City of Montgomery Chief of Police. The application further cautions that the request for a permit "must be submitted at least ten (10) days before the event is to take place. If barricades are needed for your event, there is a thirty-five ($35.00) dollar charge that must be paid before they can be ordered." (*Id*.) The application contains additional information regarding the City's policy about reimbursement of all costs incurred by the City as the result of a parade or similar event on the City's streets. (*Id*.) Finally, the application explains the appeals process if the permit application is denied.

If your permit has been denied, you have the right to appeal this denial to the City Council. This appeal must be filed with the City Clerk within three (3) days from your notification of denial.

(*Id*.).

Although the plaintiffs detail several instances in which they have preached in Montgomery with a permit, their claims spring from their request for a permit for May 28 and

29, 2004.[6]  The plaintiffs first requested and received a permit to hold a "religious protest" on June 23, 2004.  (*Id*. at p. 14, ¶ 60).  They made this request on May 10, 2004.  (*Id*.)  Some time thereafter, the plaintiffs discovered that the City of Montgomery would be hosting "Jubilee CityFest" on May 28 and 29, 2004.  Consequently, on May 17, 2004, the plaintiffs faxed to the defendants another assembly permit application requesting a permit for a "religious protest" during Jubilee CityFest (hereinafter referred to as the "CityFest protest").[7]  (*Id*. at ¶ 61).  The application for a permit for the CityFest protest was nearly identical to the application for the June 23 "religious protest" with one exception: the CityFest protest application sought permission to protest on streets different from the planned protest on June 23, 2004.  (*Id*. at ¶ 62).  For the CityFest protest, the plaintiffs sought to protest and preach on "Montgomery, Commerce, Bibb and Coosa streets (downtown)."  (*Id*. at ¶ 62).

On May 20, 2004, Major Dixon telephoned the plaintiffs and informed them that they "would have to pick other streets because "Jubilee" had the rights to the streets listed on the Plaintiffs' permit application."  (*Id*. at p. 14-15, ¶ 63).  After studying the Jubilee CityFest's designated site map on the festival's website, the plaintiffs determined that their selection of streets was not encompassed within Jubilee's boundaries.  (*Id*. at p. 15, ¶ 65).

---

[6]  On at least three occasions, the plaintiffs applied for, and were granted, permits to protest and preach on streets in Montgomery, Alabama.  Specifically, the plaintiffs submitted applications for permits dated February 5, 2004, May 4, 2004, and November 2, 2005, all of which were granted by the Chief of Police.

[7]  The application was dated May 16, 2004.  The plaintiffs' refer to this permit application as the "May 16, 2004" application.  Consequently, for clarity's sake, the court will also utilize the May 16 date to refer this application.

On May 21, 2004, Chief of Police Wilson informed the plaintiffs, by facsimile, that their permit application was "pending" until they provided alternative locations for their planned CityFest protest.  (Amended Compl., Ex. E).  Specifically, the plaintiffs were advised

> [i]n response to your permit, I understand Major Dixon has given you some alternative locations to your permit.  At this time we will put your permit on hold until we receive a location of the streets you desire.  Please let us know as soon as possible of the location you have chosen.  We will be waiting for your response.

(*Id*. at 1).

On May 21, 2004, the plaintiffs responded to the defendants' facsimile.

> To reiterate, as discussed with Major Dixon, we are **not** going to change the location of the streets (Montgomery, Commerce, Bibb and Coosa) so there is no need for us to choose an "alternative location."  Again per your correspondence that was faxed to us today the "*location of the streets you desire*" are the same streets (Montgomery, Commerce, Bibb and Coosa) that are on the permit dated for 5/16/04.

(Amended Compl., Ex. G).

After noting "PENDING" and the date, May 21, 2004, on the bottom of the permit application, the city took no further action on the plaintiffs' application for a permit.  (Pl's Ex. E.)

On May 28, 2004, the plaintiffs conducted a peaceful protest and preached on the streets they had requested.  Glynis Bethel carried signs with the messages "Repent Whore," "Repent or Burn in Hell Drunkards," and "Abortion is Killing . . . Repent" while Orlando Bethel preached.  Although the plaintiffs were observed and videotaped by two Montgomery

City police officers, they were in no way impeded in their ability to peacefully protest and preach their message of repentance. At one point, one of the officers asked Glynis Bethel to stay on the grass median; she refused citing her constitutional rights to protest on public property. No adverse action was taken against Glynis Bethel as a result of her refusal. She continued protesting, and Orlando Bethel continued preaching. At no time were the plaintiffs asked to present a permit.

## STANDARD OF REVIEW

**1. Injunctive Relief**. The plaintiffs seek both a preliminary and permanent injunction enjoining the defendants from enforcing the Ordinance requiring them to secure a permit before protesting or preaching in Montgomery, Alabama. A preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion as to *all* prerequisites. *United States v. Jefferson County*, 720 F.2d 1511 (11th Cir. 1983) (emphasis added).

> A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1097 (11th Cir. 2004) *quoting Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam). *See also This That and Other Gift & Tobacco, Inc. v. Cobb County, Ga.*,285 F.3d 1319, 1321-1322 (11th Cir. 2002); *Horton v. City of St. Augustine, Fla.*, 272 F.3d 1318, 1326 (11th Cir. 2001); *Telef v. Reno,*

180 F.3d 1286, 1295 (11th Cir. 1999); *American Red Cross v. Palm Beach Blood Bank, Inc.,* 143 F.3d 1407 (11th Cir. 1998); *Haitian Refugee Ctr., Inc. v. Christopher*, 43 F.3d 1431 (11th Cir. 1995); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,* 51 F. 3d 982 (11th Cir. 1995); *Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983). "The standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits instead of a likelihood of success." *Klay*, 376 F.3d at 1097 *quoting Siegel*, 234 F.3d at 1213. Finally, "most courts do not consider the public interest element in deciding whether to issue a permanent injunction."[8] *Id.*

The requesting party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's claim, regardless of its ability to establish any of the other elements. *See Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994). In other words, irreparable injury must be demonstrated by the plaintiffs to succeed on their claims. Here, the court readily concludes that the plaintiffs fail to demonstrate *irreparable* injury. The plaintiffs have been permitted to protest and preach and were permitted to do so on the day in question without any adverse consequences. The plaintiffs' claims that they may be arrested if they protest or preach without a permit are purely speculative. Consequently, the plaintiffs have failed to demonstrate that they meet the second prerequisite for the issuance of a preliminary injunction.

**2. Summary Judgment**. Under FED. R. CIV. P. 56(c), summary judgment is proper

---

[8] The Third Circuit is the exception. *See Shields v. Zuccarini*, 254 F.3d 476, 482 (3rd Cir. 2001).

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[9] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

The movant may meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324. If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Fitzpatrick v. City of Atlanta*, 2

---

[9] In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the court stated:

"[Where the nonmoving party will bear the burden of proof at trial on a dispositive issue...Rule 56(e)...requires the nonmoving party to go beyond the pleadings and by...affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial. . . .We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment...Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves. . . .

*Id.* at 324.

F.3d 1112, 1115-17 (11th Cir. 1993); *see also* FED. R. CIV. P. 56(e). ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

A dispute of material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n. 6 (11th Cir. 1997); *Harris v. Ostrout,* 65 F.3d 912 (11th Cir. 1995).

However, if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving

party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  With these principles

of law in mind, the court will determine now whether summary judgment is appropriate and

should be granted.

## DISCUSSION

### A.  First Amendment Violations

In Counts I, II, and IV of the amended complaint, the plaintiffs allege that their First

Amendment rights to freedom of speech, assembly and exercise of religion, respectively,

have been infringed upon by the defendants' actions.  The defendants deny that the plaintiffs'

constitutional rights were violated.  Furthermore, the defendants argue that the plaintiffs only

challenge the permit application, not MONTGOMERY, ALA., CODE §§ 25-157 through 25-175

(1983), that apply to Parades and Processions.  The court quickly disposes of this argument

which, quite frankly, is ludicrous. The *pro se* plaintiffs are entitled to a liberal construction

of their claims. *Hughes v. Rowe*, 449 U.S. 5 (1980).  But more pointedly, any fair reading

of their complaint shows that the plaintiffs very clearly challenge the application requirement

as well as the ordinances that mandate a permit to protest or preach on the streets of

Montgomery County.  In fact, the plaintiffs repeatedly assert that they are bringing a facial

and "as-applied" challenge to the ordinance. *See* Amended Compl. at ¶¶ 2, 5, 97, 108, 114,

115, 116, 117, 118, 119, 120, 121, 122, 130, 132, 133, 134, 135, 136, 137, 138, 139, 140,

142, 157, 165, 166, 167, 168, 169, 170, 171, 172).  The court construes the plaintiffs'

allegations as a challenge to the ordinances that require them to submit an application for a

permit.

The First Amendment of the United States Constitution provides that

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. CONST. amend. I.   The First Amendment is made applicable to state and local government by the Fourteenth Amendment.  *See Wallace v. Jaffree*, 472 U.S. 38, 49 (1985).

The law is well settled that "the oral and written dissemination of . . . religious views and doctrines is protected by the First Amendment."  *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981).  Moreover, public streets and sidewalks have been held to be the "quintessential public forum," in which the "government may not prohibit all communicative activity."  *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).  *See also Frisby v. Schultz*, 487 U.S. 474, 480 (1988) ("public streets as the archetype of a traditional public forum.")

It is also well established, "however, that the First Amendment does not guarantee the right to communicate one's views at all times and places and in any manner that may be desired."  *Heffron*, 452 U.S. at 647.

> [E]ven in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."

*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  *See also Frisby*, 487 U.S. at 481

*quoting Perry, supra.*

**1. Facial Challenge to the Ordinance**.[10] The plaintiffs make a facial challenge to the City's ordinance that requires them to apply for a public assembly permit. "A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself." *United States v. Frandsen*, 212 F.3d. 1231, 1235 (11th Cir. 2000). "The general rule in this circuit is that for "[a] facial challenge to be successful, [a plaintiff] 'must establish that no set of circumstances exists under which the [law] would be valid.'" *Id.*

The Montgomery ordinance applicable to parades and permits requires persons to secure a permit before participating in a public assembly. *See* MONTGOMERY, ALA., CODE §§ 25-157 through 25-175 (1983). Specifically, the ordinance defines a *parade* as "any parade, march, ceremony, show, exhibition, pageant, footrace, or procession of any kind, or any similar display, in or upon any street, park or other place in the city." *See* MONTGOMERY, ALA., CODE § 25-157, Defs' Ex. 1. The ordinance further defines a *public assembly* as "*any* gathering of persons on public streets or other public places for the purpose of conducting social, recreational or residential functions." (*Id.*) (emphasis added). Sections 25-158 through 168 govern the issuance of a permit, the process of submitting a permit

---

[10] Although the defendants assert in their motion for summary judgment that the plaintiffs do not have standing to challenge the ordinance, (Defs' Mot. for Summ. J., doc. # 36, at 1; Defs' Br., doc. # 37, at 8), they allege no facts in support of this claim and their brief contains no discussion of the applicable law related to the issue of standing. The argument of counsel is not evidence. It is not the court's responsibility to seek out facts in support of a party's position; rather, the burden is on the parties to formulate arguments and present facts in support of their positions. *See generally Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994).

More importantly, however, it would appear to any reasonable person reading the ordinance that a permit was necessary based upon the language of the ordinance as well as the actions of the defendants.

application, the standards for issuing a permit, and appeals procedure if a permit is denied.

(*Id*.)

In their brief, the defendants argue that

> [t]he public assembly permit requirement and process, as set out in the *Montgomery Municipal Code*, is for parades and public assemblies, not individuals. . . .
>
> Plaintiffs contend, in error, that an individual must get a permit prior to exercising free speech in the City of Montgomery. Plaintiffs have requested and had been granted permits On (sic) February 27, 2004 and May 10, 2004. Plaintiffs have always indicated more than 5 or more individuals on the permits.
>
> Plaintiffs were never denied their right to public speech however due to another group, Jubilee CityFest, already present at the requested location, Defendants suggested another location for Plaintiffs to assemble. Plaintiffs refused and exercised their constitutional right to free speech on the streets they requested in front of Jubilee CityFest entrance gates. . . .
>
> The statutes of the municipal code which apply to parades and processions in the City do not apply to individuals wanting to express their constitutional rights and are not an unconstitutional prior restraint. . . .
>
> Plaintiffs allege that the City of Montgomery Police Department Website (sic) requires an individual apply for a permit prior to exercising his/her right to free speech. However, it is clear that the law does not apply to an individual. Plaintiffs' claims of unconstitutional prior restraint should be dismissed and summary judgment in favor of Defendants is due to be granted.

(Defs' Br., doc. # 37, at 8 & 9).

The positions taken by the defendants are startlingly inconsistent. On one hand, the

defendants argue that the ordinance does not apply to individuals and that the plaintiffs did

not need a permit to protest or preach on May 28, 2004. On the other hand, the defendants

argue that the plaintiffs were not denied their right to protest because they had applied for

and were granted permits on other dates. The defendants can't have it both ways: either the

plaintiffs needed a permit or they didn't. Moreover, according to the defendants, the plaintiffs were not denied their right to assemble on May 28, 2004; the Chief of Police merely "suggested another location for Plaintiffs to assemble." (Defs' Br. at 8). This argument simply is a blatant misrepresentation of the facts which shows that the responsible officials told the plaintiffs their permit application was "pending" their selection of other locations. Any reasonable person would understand that no permit would be issued until they complied. That the plaintiffs were allowed to protest and preach on this occasion is of no moment to their facial challenge.

The defendants first assert that the plaintiffs did not need a permit for their planned protest and preaching on May 28, 2004. To be entitled to summary judgment, the defendants must demonstrate that there are no disputed issues of material fact and they are entitled to judgement as a matter of law. The broad conclusory arguments are not appropriate substitutes for evidence which meets the requirements of FED. R. CIV. P. 56.[11] The defendants have submitted no evidence in support of their position that the plaintiffs did not need a permit. Rather, the undisputed evidence demonstrates that the plaintiffs were never told they did not need a permit to protest on May 28, 2004, and the facts show that in the past they were granted a permit. When the plaintiffs submitted their May 16 application for a permit to protest and preach on May 28, 2004, the defendants engaged in conduct that implied that the plaintiffs needed a permit. The plain language of the ordinance also conveys

---

[11] FED. R. CIV. P. 56(e) requires that evidence be of "such facts as would be admissible in evidence."

to any reasonable person that to engage in a public assembly on the streets of the City of Montgomery, the person would be required to have to a permit. Section 25-158 is clear: "*No person* shall engage in, participate in, aid, form or start any parade or public assembly, unless a parade or public assembly permit shall have been obtained from the chief of police." MONTGOMERY, ALA., CODE § 25-158 (1983) (emphasis added). The ordinance further defines a public assembly as "*any* gathering of persons on public streets or other public places for the purpose of conducting social, recreational or residential functions." MONTGOMERY, ALA., CODE § 25-157 (1983) (emphasis added). To the extent that the defendants argue that the ordinance does not apply to the plaintiffs because it does not apply to individuals, a clear reading of the ordinance demonstrates that the defendants are simply wrong. The ordinance prohibits *any* person from engaging in a public assembly without first obtaining the requisite permit.

The defendants also appear to suggest that one reason the plaintiffs were required to obtain a permit for other protests was the number of persons listed on their permit application. (Defs' Mot. for Summ. J. at 5) "Plaintiffs, in the past, have submitted applications for five or more person to assemble and have been granted permits." (*Id*). The ordinance does not base the need for a permit on the number of persons attending the assembly.[12] *See* MONTGOMERY, ALA., CODE § 25-157 (1983). Consequently, to the extent

---

[12] In fact, a specific numeric delineation is contained only in the definition of a footrace. "*Footrace* is an athletic event involving two (2) or more persons for the purpose of competition, recreation, or for the purpose of promotional publicity." MONTGOMERY, ALA., CODE § 25-157 (1983) (emphasis in original).

that the defendants argue that they are entitled to summary judgment because the plaintiffs did not need a permit for their planned protest and preaching on May 28, 2004, their motion on this basis is due to be denied.

   2. **Prior restraint.**   Now, the court turns to the plaintiffs' argument that the City's ordinance requiring a permit is an unconstitutional prior restraint on their First Amendment rights.  "A prior restraint on speech prohibits or censors speech before it can take place." *Cooper v. Dillon*, 403 F.3d 1208, 1215 (11th Cir. 2005) (internal citations omitted).

> Because statutes silencing speech before it happens are inimical to the tenets of free expression underlying a free society, these statutes are characterized as prior restraints on speech and are subjected to strict scrutiny.  *See Burk v. Augusta-Richmond County*, 365 F.3d 1247, 1251 (11th Cir. 2004).  Because statutes representing governmental favoritism of preferred speech or suppression of disfavored speech are likewise antithetical to a free society, these content-based restrictions are also subjected to strict scrutiny.  *See Boos v. Barry*, 485 U.S. 312, 321, 10 S.Ct. 1157, 1164, 99 L.Ed.2d 333 (1988).  Statutes which prescribe the time, place, and manner in which First Amendment rights may be exercised irrespective of the message being conveyed are deemed to be content-neutral statutes which are analyzed under a lower standard of scrutiny.  *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986).

*Id.*, at 1214-15.

   An ordinance also constitutes a prior restraint when public officials have the "power to deny use of a forum in advance of actual expression." *Ward*, 491 U.S. at 795 n. 5 (1989).

> "Prior restraints have also been found where the government has unbridled discretion to limit access to a particular public forum.  *See United States v. Frandsen*, 212 F.3d 1231, 1236-37 (11th Cir. 2000) (finding prior restraint here a National Park Service licensing scheme gave park official unlimited power to grant or deny permits to protest in a park).

*Cooper*, 403 F.3d at 1215.

Because the ordinance requires the Chief of Police to approve the permit request before the speech occurs, the ordinance constitutes a "prior restraint on speech." *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992). *See also Burk v. Augusta-Richmond County*, 365 F.3d 1247, 1250 (11th Cir. 2004) (Ordinance that requires permission to protest or demonstrate constitutes a prior restraint on speech.); *Frandsen*, 212 F.3d at 1236-37 ("A prior restraint of expression exists when the government can deny access to a forum before expression occurs."). The streets of Montgomery are "quintessential public forums." *Nationalist Movement v. City of Cumming, Ga.* 92 F.3d 1135, 1139 (11th Cir. 1996). Thus, "the City's right to limit expressive activity on these streets is "sharply circumscribed."" *Id*.

Although prior restraints are presumptively invalid, the defendants can overcome that presumption if the ordinance at issue contains certain safeguards, including content-neutrality. "When the government seeks regulation that restricts content neutral expressive activity in a public forum, the First Amendment requires that the regulation satisfy the time, place, and manner test." *Int'l Caucus of Labor Comms. v. City of Montgomery*, 111 F.3d 1548, 1550 (11th Cir. 1997).

> The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some

19

> speakers or messages but not others. Government regulation of expressive
> activity is content neutral so long as it is "*justified* without reference to the
> content of the regulated speech."

*Ward*, 491 U.S. at 791 (internal citations omitted). *See also Hill v. Colorado*, 530 U.S. 703,

719 (2000). *See also Burk*, 365 F.3d at 1251 ("Prior restraints are presumptively

unconstitutional and face strict scrutiny. Nonetheless, a prior restraint may be approved if

it qualifies as a regulation of time, place, and manner of expression rather than a regulation

of content."). Thus, the court turns to the question of whether the ordinance is content-

neutral.

"[A] regulation that serves purposes unrelated to the content of expression is deemed

neutral, even if it has an incidental effect on some speakers or messages but not on others."

*Cooper*, 403 F.3d at 1215 *quoting Ward*, 491 U.S. at 791. The ordinance requires, in

pertinent part, the following.

> (2) *Contents*. The application for a parade or public assembly permit shall set
> for the following information:
>
> > a.    The name, address and telephone number of the person seeking
> > to conduct such parade or public assembly.
> > b.    If the parade of public assembly is proposed to be conducted for,
> > on behalf of, or by any organization, the name, address and
> > telephone number of the headquarters of the organization, and
> > of the authorized and responsible heads of such organization.
> > c.    The name, address and telephone number of the person who will
> > be the parade or public assembly chairman who will be
> > responsible for its conduct.
> > d.    The date when the parade or public assembly is to be conducted.
> > e.    The hours when such parade or public assembly will start and
> > terminate.
> > f.    A statement as to whether the parade or public assembly will

occupy all or only a portion of the width of the streets proposed to be traversed.

g.    The location by streets of any assembly areas for such parade or public assembly.

h.    The time at which units of the parade or public assembly will begin to assemble at any such assembly area or areas.

i.    The interval of space to be maintained between units of such parade.

j.    If the parade or public assembly is designed to be held by and on behalf of or for, any person other than the applicant, the applicant for such permit shall file with the chief of police a communication in writing from the person proposing to hold the parade or public assembly authorizing the applicant to apply for the permit on his behalf.

MONTGOMERY, ALA., CODE § 25-159 (1983).

The Montgomery ordinance neither targets the content of nor attempts to regulate speech. Rather, the ordinance regulates the place, time and manner of public assembly in the City of Montgomery. There is no evidence, and the plaintiffs point to none, that suggests that the ordinance was adopted because the defendants disagreed with or were attempting to control the message of any protesters. The ordinance's objectives are not aimed at the content of the plaintiffs' message. "[Go]vernment regulation of expressive activity is "content neutral" if it is justified without reference to the content of the regulated speech." *Hill*, 530 U.S. at 720. The ordinance applies to all demonstrators regardless of their message or speech. The Montgomery ordinance "places no restrictions on - and clearly does not prohibit - either a particular viewpoint or any subject matter that may be discussed by a speaker." *Id.*, at 723. Finally, the City's interest in protecting its streets and its citizenry is not related to the content of any speech. Consequently, the court concludes the ordinance is

21

content-neutral.

In addition to content-neutrality, "a time, place, and manner regulation [must] contain adequate standards to guide the official's decision and render it subject to effective judicial review." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323 (2002).

> Even a facially content-neutral time, place, and manner regulation may not vest public officials with unbridled discretion over permitting decisions. *See Shuttlesworth v. Birmingham*, 394 U.S. 147, 150-51. 89 S.Ct. 935, 938-39, 22 L.Ed.2d 162 (1969); *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130-31, 112 S.Ct. 2395, 2401-02, 120 L.Ed.2d 101 (1992). Excessive discretion over permitting decisions is constitutionally suspect because it creates the opportunity for undetectable censorship and signals a lack of narrow tailoring. *See id.*; *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1362 (11th Cir. 19990; *Miami Herald Pub. Co. v. City of Hallandale*, 734 F.2d 666, 675 (11th Cir. 1984). Therefore, time, place, and manner regulations must contain "narrowly drawn, reasonable and definite standards," *Thomas*, 534 U.S. at 324, 122 S.Ct. at 781, "to guide the official's decision and render it subject to effective judicial review," *id.* at 323, 122 S.Ct. at 780.

*Burk*, 365 F.3d at 1256.

The Montgomery ordinance mandates the standard for issuance of a permit for a parade or public assembly.

> (a) The chief of police *shall* issue a permit as provided for hereunder when, from a consideration of the application and from such other information as may otherwise be obtained, he finds that:
>
> (1)    The conduct of the parade or public assembly will not substantially interrupt the safe and orderly movement of other traffic contiguous to its route or location.
>
> (2)    The conduct of the parade or public assembly will not require the diversion of so great a number of police officers of the city to properly police the line of movement and the areas contiguous  thereto as to

prevent normal police protection to the city.

(3)    The conduct of the parade or public assembly will not require the diversion of so great a number of ambulances as to prevent normal ambulance service to portions of the city other than that to be occupied by the proposed line of march and areas contiguous thereto.

(4)    The concentration of persons, animals and vehicles at assembly points of the parade will not unduly interfere with proper fire and police protection of, or ambulance service to, areas contiguous to such assembly areas.

(5)    The conduct of such parade or public assembly will not interfere with the movement of fire fighting equipment enroute to a fire.

(6)    The conduct of the parade or public assembly is not reasonably likely to cause injury to persons or property, to provoke disorderly conduct or create a disturbance.

(7)    The parade is scheduled to move from its point of origin to its point of termination expeditiously and without unreasonable delays enroute.

(8)    The parade or public assembly is not to be held for the sole purpose of advertising any product, goods or event, and is not designed to be held purely for private profit.

(9)    The chief of police, if he deems necessary, may require the applicant to designate a certain number of parade marshals who shall be responsible for conducting the parade or assembly in an orderly manner.

MONTGOMERY, ALA., CODE § 25-160 (1983) (emphasis added).

While ordinances that "vest unbridled discretion" in a city official to determine whether to grant or deny a permit"are constitutionally suspect, *see Ward*, 491 U.S. at 793, the court concludes that the ordinance at issue does not vest such discretion in the Chief of Police. The ordinance does not allow the Chief of Police to consider the content of the

speech to be uttered during the parade or public assembly. Rather, the ordinance requires the Chief of Police to consider the safety and protection of citizens, protesters, and the availability of community resources. The Chief of Police must issue the permit *unless* he finds that the parade or public assembly would disrupt the ability of the City to provide essential services.[13] The grounds upon which the Chief of Police may deny the permit are "reasonably specific and objective, and do not leave the decision "to the whim of the administrator." *Thomas*, 534 U.S. at 324. "Regulations of the use of a public forum that ensure the safety and convenience of the people are not "inconsistent with civil liberties but . . . [are] one of the means of safeguarding the good order upon which [civil liberties] ultimately depend." *Id.*, at 323 *quoting Cox. v. New Hampshire*, 312 U.S. 569, 574 (1941). Thus, the court concludes that the ordinance provides adequate standards to guide the Chief of Police's decision and allow his decision to be subjected to effective review.

The City of Montgomery "may enforce reasonable restrictions on the time, place and manner of the speech if [the restrictions] are "content neutral, are narrowly tailored to achieve a significant government interest, and leave open ample alternative channels of communication." *Nationalist Movement*, 92 F.3d at 1139. The court now turns to whether

---

[13] Although the plaintiffs do not challenge the ordinance on the basis of overbreadth, "the Supreme Court has permitted facial challenges based on overbreadth where an ordinance delegates overly broad discretion to enforcement officers, . . ." *DA Mortgage, Inc.*, 486 F.3d at 1269 *quoting United States v. Salerno*, 481 U.S. 739, 745 (1987). Even if the court were to construe the plaintiffs' complaint as raising an overbreadth argument, the defendants would be entitled to judgment as a matter of law as the ordinance clearly cabins the discretion of the police chief and mandates the issuance of permits except in limited specific circumstances.

the "[t]he city's regulation is also "narrowly tailored to serve a significant governmental interest." *Ward*, 491 U.S. at 796. *See also Hill*, 530 U.S. at 725. The ordinance serves the governmental interest of protecting citizens, ensuring the availability of community resources, and coordinating the use of public property. *See Central Fla. Nuclear Freeze Campaign v. Walsh*, 774 F.2d 1515, 1528 (11th Cir. 1985) (government has a compelling interest in protecting the safety of its citizens.) In addition, "[s]tates and municipalities plainly have a substantial interest in controlling the activity around certain public and private places." *Hill*, 530 U.S. at 728. Finally, the ordinance does not have to be the least restrictive or least intrusive means of serving the City's objective.

> [W]e reaffirm today that a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but it need not be the least restrictive or least intrusive means of doing so. Rather, the requirement of narrow tailoring is satisfied "as long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation."

*Ward*, 491 U.S. at 798-99. The court concludes that the ordinance is narrowly tailored to protect and promote the City's interest in protecting its citizens, managing the use of public property and ensuring the availability of community protective services.

Finally, the court considers whether the ordinance "leave[s] open ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791; *Frisby*, 487 U.S. at 481 *quoting Perry, supra*, 460 U.S. at 45. The plaintiffs allege no facts and makes no argument in response to the defendants' motion for summary judgment that the ordinance provides "ample alternative channels" for communication. The plaintiffs have failed to state

with any coherent degree of specificity why the ordinance does not provide ample alternative opportunity to communicate their religious beliefs.

The ordinance does not ban all protesting or street preaching. Rather, the ordinance allows demonstrations and protests on the City's streets provided that the demonstration or assembly does not impede traffic and emergency vehicles. Clearly, the ordinance "preserves ample alternative channels of communication." *See Frisby*, 487 U.S. at 484.

For the reasons as stated, the court concludes that although the ordinance is a prior restraint of speech, the ordinance is a reasonable time, place and manner restriction that is "justified without reference to the content of the regulated speech, that . . . [is] narrowly tailored to serve a significant governmental interest, and that . . . leave[s] open ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791. Consequently, the court concludes that the ordinance does not violate the First Amendment, and the plaintiffs' facial challenge to the ordinance fails.

### B. Equal Protection Claims

Under the Equal Protection Clause of the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV § 1. The plaintiffs' amended complaint states, in a convoluted and conclusory fashion, that the defendants' conduct violated their equal protection rights. To establish a claim cognizable under the Equal Protection Clause, the plaintiffs must allege that they are similarly situated with other persons who were treated differently and that the reason for the

differential treatment was based on race, religion, national origin, poverty or some other constitutionally protected interest. *Jones v. Ray*, 279 F.3d 944, 947 (11th Cir. 2001); *Damiano v. Florida Parole & Probation Comm'n*, 785 F.2d 929 (11th Cir. 1986). Additionally, to succeed on an equal protection claim, the plaintiffs must prove the existence of discriminatory intent; arbitrary action without discriminatory intent is insufficient to demonstrate a violation of the Equal Protection Clause. *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993); *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987).

In response to the defendants' motion for summary judgment, the plaintiffs merely reiterate that "[t]he Defendants' actions in denying the Plaintiffs' their rights to . . . equal protection under the United States Constitution has been proven by the mere existence of this custom ordinance (or law) of forcing the "City of Montgomery Application for a Public Assembly Permit."[14] (Reply to Defs' Reply, doc. # 41 at 2). The plaintiffs do not identify similarly situated other persons who were treated differently because of their religion. They point the court to no facts from which the court could identify these other people. They present no facts from which the court could conclude they was similarly situated to these other people. Their unsworn reply is simply insufficient to defeat the defendants' motion for

---

[14] The ordinance at issue does not create any classifications, but to the extent that the plaintiffs make this type challenge, it certainly survives an equal protection challenge under the rational basis test. That test asks (1) whether the government has the power or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objective and the means it has chosen to achieve it. *Cash Inn of Dade, Inc. v. Metro. Dade County*, 938 F.2d 1239, 1241 (11th Cir. 1991). As noted in the discussion about the First Amendment, the City certainly has an interest in protecting its citizens and the ordinance is plainly rationally related to that end.

summary judgment.

Moreover, the plaintiffs have presented no competent evidence from which a reasonable jury could conclude that their treatment by the defendants was due to a constitutionally impermissible reason.

> Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.  *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also  McCleskey v. Kemp*, 481 U.S. 279, 297-299 (1987).

*Hernandez v. New York*, 500 U.S. 352, 359 (1991).  *See also e.g., Mencer v. Hammonds,* 134 F.3d 1066, 1069 (11th Cir. 1998) (holding that a government actor cannot violate a plaintiff's equal protection rights unless the defendant has the intent to discriminate); *Parks v. City of Warner Robins, Ga.*, 43 F.3d 609, 616 (11th Cir. 1995) ("[P]roof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim.").

In the absence of proof indicating the plaintiffs were similarly situated to other persons, that they were treated differently because of their religious views, or that the conduct of the defendants was intentionally discriminatory, the defendants are entitled to summary judgment as a matter of law.

### C.  Fourth Amendment Unreasonable Seizures Claim

In count V of the amended complaint, the plaintiffs allege that they were deprived of "their right to be free from unreasonable seizure" by a threat of arrest.  The Fourth Amendment guarantees that persons will be secure in their persons against unreasonable

28

searches and seizures. "The Fourth Amendment is implicated when a police officer either briefly detains a citizen for investigatory purposes or holds a citizen pursuant to an arrest. *United States v. Hastamorir,* 881 F.2d 1551, 1556 (11th Cir.1989)." *Bryan v. Spillman,* 217 Fed. Appx. 882, 884, *2 (11th Cir. 2007) (No. 06-13970). It is undisputed that the plaintiffs were not arrested or otherwise seized at any time during their peaceful protest on May 28, 2004. Because the plaintiffs were not arrested or otherwise prevented from protesting or preaching, the court concludes that the plaintiffs have not asserted any facts or pointed to any evidence that would establish a Fourth Amendment violation. *See Id.* at *3.

### D. City of Montgomery Police Department

The plaintiffs sued the City of Montgomery Police Department. In this circuit, the law is well established that sheriff departments and police departments are not legal entities subject to suit or liability under 42 U.S.C. § 1983. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992). Accordingly, the City of Montgomery Police Department's motion for summary judgment is due to be granted.

### CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge as follows:

1.      That the plaintiffs' motion for a preliminary injunction (doc. # 39) be DENIED.

1.      That the defendants' motion to dismiss (doc. # 12) be DENIED.

2.      The plaintiffs' motion to waive posting of security (doc. # 43) and motion for judgment on the pleadings (doc. # 48) be and are hereby DENIED.

3.      That the plaintiffs' motion to admit exhibit and "Yy" and additional memorandum (doc. # 44) be and is hereby GRANTED.

4.      The plaintiffs' motions for a declaratory judgment (docs. # 2 & 6), motion for summary judgment (doc. # 29) be DENIED and this case DISMISSED with prejudice.

5.      That, for the reasons as stated, the defendants' motion for summary judgment (doc. # 36) be GRANTED.

It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **March 16, 2010.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.   Frivolous, conclusive or general objections will not be considered by the District Court.   The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982)*.  See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).   *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on

September 30, 1981.

Done this 2nd day of March 2010.

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

    /s/Charles S. Coody

CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE